UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MELANIE T. JAHRSDOERFER-ROWE ) | No.  CV 11-1476 AJW |
| ) | |
|       **Plaintiff,** ) | |
|   **v.** ) | |
| ) | **MEMORANDUM OF DECISION** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
|       **Defendant.** ) | |
| ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are not disputed and are recited in the Joint Stipulation.  [See JS 2]. In a written hearing decision that constitutes the Commissioner's final decision in this case, an administrative law judge (the "ALJ") found that plaintiff was not disabled prior to December 31, 2008, her date last insured, because she retained the residual functional capacity ("RFC") to perform a restricted range of light work. [JS 2; Administrtaive Record ("AR") 17-16].

///

///

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating physicians' opinions**

Plaintiff contends that the ALJ erred in evaluating the opinions of treating physicians Mohammed M. Ali, M.D., and Robert Jackson, M.D.

Dr. Ali is a board-certified family physician who treated plaintiff on a monthly basis from December 2007 through at least October 2010. [See AR 501-553, 605-858, 872-917]. Dr. Ali completed impairment severity questionnaires in September 2008 and November 2010, and he also wrote a letter about plaintiff's condition addressed "to whom it may concern" dated October 2008. [AR 503-510, 551-553, 864-871]. Dr. Ali gave plaintiff diagnoses of moderate spinal canal stenosis, severe foraminal stenosis, chronic back and cervical pain, severe peripheral neuropathy, hepatitis C, anxiety, depression, and fibromyalgia. [AR 503, 551, 864]. Dr. Ali noted that plaintiff was taking a number of prescribed medications, including narcotic pain medication, and that her medications caused drowsiness. Dr. Ali opined that plaintiff's impairments did not preclude her from performing the lifting and carrying requirements of light work, but he opined that she could

sit, stand, and walk for only brief intervals during an eight-hour day, and would frequently need to change positions or take unscheduled breaks. He also opined that plaintiff: (1) had "moderate" or "marked" limitations using her upper extremities for fine manipulation and for grasping, turning, and twisting objects, (2) had postural and environmental limitations; (3) could tolerate little or no work stress; (4) would frequently experience symptom-based interference with attention and concentration; (5) exhibited symptoms and functional limitations that were "reasonably consistent" with her physical and mental impairments; (6) was likely to be absent more than three times a month; and (7) was not a malingerer. [AR 503-510, 551-553, 864-871].

Dr. Jackson is a board-certified neurological surgeon who treated plaintiff between February 2006 and November 2010. [AR 559-582, 918-938]. Plaintiff initially was referred to Dr. Jackson for a four-year history of progressively more severe cervical pain. Dr. Jackson performed a surgical decompression and disc replacement in May 2007, which provided a "fair amount of improvement of her cervical pain and radicular symptomatology." [AR 919]. However, plaintiff subsequently was attacked by a dog, resulting in "extensive bites to her arms," and nerve damage in her arms and hands. [AR 919]. Dr. Jackson noted that plaintiff's use of narcotic pain medication would "likely cause impaired cognitive function [and] memory," as well as fatigue. [AR 920]. Dr. Jackson opined that plaintiff's symptoms had been present for seven or eight years, and he "suspect[ed] she would have a hard time maintaining any type of job with her history of chronic pain, disability, [and] pain medication consumption." [AR 920]. Dr. Jackson also completed a questionnaire in November 2010 indicating that plaintiff had limitations similar to those assessed by Dr. Ali, except that Dr. Jackson assessed only minimal upper extremity limitations. [AR 922-929]. Dr. Jackson opined that plaintiff could perform the lifting and carrying requirements of light work, but could sit no only three hours in an eight-hour day a day, stand or walk one or two hours in an-eight hour day, and would need to change positions every thirty minutes. [AR 924-925]. Dr. Jackson also opined that plaintiff: (1) could tolerate little work stress; (2) would frequently experience symptom-based interference with attention and concentration; (3) exhibited symptoms and functional limitations that were "reasonably consistent" with her physical and mental impairments; (4) was likely to be absent more than three times a month; and (5) was

not a malingerer. [AR 927-928].

The ALJ said that he gave the greatest weight to the opinion of Dr. Ostrow, a medical expert who testified during the administrative hearing. [See AR 23]. The ALJ said that he found Dr. Ali's treating source opinions "partially persuasive," in that "the lifting and postural limitations are supported by the objective and clinical findings." [AR 24]. The ALJ rejected the remaining limitations assessed by Dr. Ali. [AR 24]. The ALJ referred to plaintiff's neurosurgical treatment records but did not mention Dr. Jackson by name or discuss Dr. Jackson's November 2010 opinion. [AR 22].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2).

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Orn, 495 F.3d at 632; Tonapetyan, 242 F.3d at 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ's reasons for rejecting the opinions of Dr. Ali and Dr. Jackson were not specific and legitimate. The ALJ did not discuss the medical evidence after plaintiff's date last insured, including the November 2010 opinions from Dr. Ali and Dr. Jackson, because "[plaintiff's] limitations since December 2008 are not relevant to this decision and will not be considered or addressed." [AR 24].

The Ninth Circuit "has specifically held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." Lester, 81 F.3d at 832 (holding that the ALJ erred in rejecting an examining psychologist's opinion that was completed several months after the claimant's last insured date) (citing Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)[1]; see Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011) (holding that where a psychiatrist examined the claimant twice and supervised his treatment by a nurse-practitioner during the insured period, and rendered a medical opinion that post-dated the date last insured, but "related to the period before [the claimant's] disability insurance coverage expired," the psychiatrist's opinion was relevant and must be considered); cf. Petty v. Astrue, 550 F. Supp. 2d 1089, 1097-1098 (D. Ariz. 2008) (holding that the ALJ committed legal error by rejecting an examining source opinion that was rendered more than a year after the claimant's date of last insured, and noting that "a claimant may offer retrospective diagnoses that relate back to the insured period to show disability").

Although Dr. Ali's November 2010 opinion post-dated the expiration of plaintiff's insured status, he specified that his opinion applied to her condition beginning in December 2007. Similarly, Dr. Jackson said that his November 2010 opinion applied to plaintiff's condition as of February 2007. Both Dr. Ali and Dr. Jackson treated plaintiff (and thus had personal knowledge of her condition) during her insured period. The date of their November 2010 opinions is not a legitimate reason for rejecting them, especially considering that the ALJ gave "great weight" to the December 2010 of Dr. Ostrow, who did not examine or treat plaintiff either before or after her date last insured.

The ALJ also found Dr. Ali's opinions "partially persuasive to the extent they are consistent with the objective evidence of record," but he did not specify either the objective evidence that supports the parts of Dr. Ali's opinions that he accepted or the objective evidence

---

[1] Lester distinguished Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984, in which the Ninth Circuit held that the Commissioner properly rejected the opinion of psychiatrist who had treated the claimant several years before the relevant period and had not examined him in several years. See Lester, 81 F.3d at 832.

1    that justified rejecting the balance of his opinions. The ALJ cannot reject a treating physician's
2    opinion merely by broadly asserting that the opinion is inconsistent with the objective evidence.
3    See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988) ("To say that medical opinions are not
4    supported by sufficient objective findings or are contrary to the preponderant conclusions
5    mandated by the objective findings does not achieve the level of specificity our prior cases have
6    required, even when the objective factors are listed seriatim."); see also Reddick, 157 F.3d at 725
7    ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and
8    explain why they, rather than the doctors', are correct.") (citing Embrey, 849 F.2d at 421-422)..

9    The ALJ also concluded that some of Dr. Ali's "assertions are not consistent with even the
10   claimant's allegations. For example, the extreme sitting, standing, and walking requirements are
11   not in any way realistic or supported by any evidence found in the record. The possibility always
12   exists that a doctor may express an opinion in an effort to assist a patient with whom he
13   sympathizes for one reason or another." [AR 24].

14   The ALJ's incredulity is not a specific, legitimate reason for rejecting a treating source
15   opinion. Nor may an ALJ reject a medical opinion that is favorable to the claimant merely because
16   the ALJ suspects that the doctor is sympathetic to the claimant. See Lester, 81 F.3d at 832( "The
17   [Commissioner] may not assume that doctors routinely lie in order to help their patients collect
18   disability benefits," but "may introduce evidence of actual improprieties . . . ."); Petty, 550
19   F.Supp.2d 1099 (holding that the ALJ's conclusion that a treating physician was "sympathetic to
20   the claimant and is trying to help her obtain disability" was not a clear and convincing reason for
21   rejecting that doctor's opinion) (citing   McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th
22   Cir.2002) ("[A]n ALJ's assertion that a family doctor naturally advocates his patient's cause is not
23   a good reason to reject his opinion as a treating physician.")).  The ALJ did not point to actual
24   improprieties in Dr. Ali's opinion that would justify rejecting it..

25   Nonetheless, there is ambiguity in Dr. Ali's responses to some questions on the impairment
26   questionnaires. Asked to list the "precipitating factors leading to pain," Dr. Ali responded:
27   "prolonged standing, walking, sitting can cause more pain." [AR 505]. A subsequent question
28   asked him to complete this statement: "In an eight-hour day, my patient can only (circle full

1  capacity for each activity)." [AR 505]. Dr. Ali indicated that plaintiff could sit or stand and walk
2  for "0-1" hours. [AR 505; see also AR 866]. If plaintiff could sit and stand or walk for less than
3  an hour each in total during an eight-hour day, it makes little sense to also specify, as Dr. Ali did,
4  that she would need to change positions frequently, stand for up to 30 minutes before returning
5  to sitting, and likely would need to take unscheduled breaks "at least every hour" for 15 minutes
6  before returning to work. [AR 505-508, 866-869]. However, the sitting and standing limitations
7  Dr. Ali noted would be consistent with each other—and with plaintiff's subjective testimony—if
8  "0-1" referred to how long plaintiff could sit or stand and walk *at one time*. For example, plaintiff
9  testified that she could only sit, stand, or walk for roughly 15 to 30 minutes at a time before
10 needing to change positions or take a break and rest. [AR 50-53].

11 "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for
12 proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."
13 Tonapetyan, 242 F.3d at 1150 (internal quotation marks omitted). "A specific finding of
14 ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the
15 record establishes ambiguity or inadequacy." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir.
16 2011) (footnote omitted). "The ALJ may discharge this duty in several ways, including:
17 subpoenaing the claimant's physicians, submitting questions to the claimant's physicians,
18 continuing the hearing, or keeping the record open after the hearing to allow supplementation of
19 the record." Tonapetyan, 242 F.3d at 1150 (internal quotation marks omitted). The ALJ did not
20 "conduct an appropriate inquiry" to resolve the ambiguity in Dr. Ali's opinions, evidently because
21 the ALJ considered the record adequate to make a disability determination despite his erroneous
22 exclusion of Dr. Ali's and Dr. Jackson's post-2008 treating source evidence. In these
23 circumstances, the ALJ's reliance on the opinion of Dr. Ostrow, a non-examining medical expert,
24 was legal error. See Morgan, 169 F.3d at 602 ("The opinion of a nonexamining medical advisor
25 cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an
26 examining or treating physician.").

27 For all of these reasons, the ALJ committed legal error by failing to articulate specific and
28 legitimate reasons based on substantial evidence for rejecting the treating source opinions of Dr.

- 7 -

Ali and Dr. Jackson.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

A remand for further administrative proceedings is the appropriate remedy because outstanding issues remain to be resolved before a determination of disability can be made, such as whether the ambiguity in Dr. Ali's opinions can be resolved with appropriate inquiry, and whether a finding of disability can be made based on a proper evaluation of the record as a whole. On remand, the ALJ should offer plaintiff a supplemental hearing and issue a new decision with appropriate findings, including a reevaluation of the credibility of plaintiff's subjective complaints

in light of a properly evaluated medical record.²

## Conclusion

For the reasons described above, the Commissioner's decision is **reversed,** and the case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED**

October 16, 2012



ANDREW J. WISTRICH
United States Magistrate Judge

---

² This disposition makes it unnecessary to consider plaintiff's contention that the ALJ erred in evaluating the credibility of her subjective complaints.

- 9 -